UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FILED
JUN 15 2016
U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) No. **4:16CR00245 JAR/SPM** |
| AZEEM U. MEO, | ) |
| Defendant. | ) |

### INDICTMENT

### COUNTS 1 and 2

The Grand Jury charges that:

#### Introduction

1. At all times relevant to this indictment, Azeem U. Meo (Meo) was a resident of St. Louis County, Missouri. At various times, he wholly or partially owned or had a management role in the following companies: Ultimate Practice Solutions, LLC (Ultimate Practice or UPS), Series 7 Outsourcing, LLC (Series 7), United Trading, LLC, and Hamayshaa, LLC.

2. Ultimate Practice was incorporated in 2005 by Meo and provided billing services to health care providers, including Abdul Naushad, M.D. (Dr. Naushad). Meo is the father-in-law of Dr. Naushad. Wajiha Naushad, the wife of Dr. Naushad, was the registered agent for Ultimate Practice.

3. In 2010, Ultimate Practice, Dr. Naushad, and others entered into a civil settlement with the United States and paid $820,000 to resolve allegations of fraudulent billing. The settlement involved the submission of claims for physical therapy purportedly provided by Dr. Naushad at his six Advanced Pain Clinics, located throughout Missouri.

4.      As part of the settlement with the United States, in March 2010, Ultimate Practice and Meo agreed to be excluded from participation in any capacity in the Medicare and Medicaid Programs and all federal health care programs for five years. They were thereafter placed on the List of Excluded Individuals and Entities, which may be accessed by the public.

5.      Azeem Meo acknowledged in the written settlement agreement that he understood the effect of the exclusion and the consequences of his failure to comply with the exclusion conditions. The agreement expressly stated that the exclusion:

> shall have national effect and shall also apply to all other federal procurement and nonprocurement programs. Federal health care programs shall not pay anyone for items or services, including administrative and management services, furnished, ordered, or prescribed by Mr. Meo or UPS in any capacity while Mr. Meo or UPS are excluded. This payment prohibition applies to Mr. Meo, UPS, and other individuals and entities (including, for example, anyone who employs or contracts with Mr. Meo or UPS, and any hospital or other provider where Mr. Meo or UPS provides services). This exclusion applies regardless of who submits the claim or other request for payment. Mr. Meo and UPS shall not submit or cause to be submitted to any Federal health care program any claim or request for payment for items or services, including administrative and management services, furnished, ordered, or prescribed by Mr. Meo or UPS during the exclusion. Mr. Meo and UPS understand that violation of the conditions of the exclusion may result in criminal prosecution, the imposition of civil monetary penalties and assessments, and an additional period of exclusion.

6.      The exclusion became effective on March 9, 2010 and remained in effect for five years. After the expiration of the exclusion period, Meo could apply for re-instatement to the United States Department of Health and Human Services.

### Health Care Fraud Scheme
### Title 18, Section 1347(a)(1) and Section 2

7.      Paragraphs 1 through 6 are incorporated by reference as if fully set out herein.

8.      Beginning in or about 2010, and continuing through in or about December 2012, Meo and others knowingly and willfully executed and attempted to execute a scheme and artifice

2

to defraud a health care benefit program, in connection with the delivery of or payment for health care benefits, items, or services as described below.

9.  In or about 2009, Allegiance Medical Services (AMS) was incorporated in Missouri. AMS provided laboratory testing services to patients insured by federal health care programs, including the Medicare Program, the Medicaid Program, and private insurance companies.

10.  From in or about October 2009, to in or about January 2013, Anthony Camillo (Camillo) was associated with AMS in various capacities. At different times, Camillo identified himself as the president, managing partner, or technical director of AMS.

11.  As stated above, in March 2010, Meo was excluded from participation in any way in federal health care programs. However, Meo wanted to continue to be involved with these programs and devised a way to conceal his involvement. As part of the scheme and artifice to defraud, on or about November 1, 2010, Meo arranged for the original owner of AMS to transfer his 51% ownership interest to a new company, Hamayshaa, LLC, owned by Meo's son, Kazim Azeem Meo (Kazim). Camillo retained a 49% ownership interest in AMS.

12.  Although on paper Kazim, doing business as Hamayshaa, was the majority owner, Meo in fact controlled AMS, was involved in all aspects of the company, made all major decisions concerning AMS, and financially benefited from his involvement in AMS. An examination of a few of Meo's e-mails and AMS bank records reveal the breadth and depth of Meo's management and control of AMS.

### Meo's E-mails Concerning AMS Laboratory

13.  Meo frequently and routinely used e-mail to give directions and to otherwise communicate with AMS staff. As revealed in the examples below, Meo managed AMS

3

financials, made decisions concerning the staff to be hired or retained, the qualifications of potential employees, and accounts to be serviced.

July 22, 2011 E-mail

14. In an e-mail dated July 22, 2011 to Camillo, Meo stated: "Per our conversation yesterday here is the summary: I will take over financials as of today. Let's get rid of X-Ray department. Lay off three people two X-Ray and one from lab."

15. The same e-mail reflects Azeem Meo's involvement in the re-organization of AMS. Meo stated:

> Since it will take 8 months to finalize the new lab license you proposed. Divide Lab into two sections (departments)
>     Blood Work (Lab B)
>     Drug Test (Lab D)
> You will be in-charge and responsible for Lab B. [Kazim] will be responsible for Drug Testing Lab D. Lab B will cover all operating expenses of Lab B and D, including reagents. Profit of Lab B will be split 50/50 between [Kazim] and you while shares will remain 51/49 respectively. Lab D will not have any share any profit with you . . . . We will have external billing audit by outside person.

July 31, 2011 E-mails

16. A July 31, 2011 e-mail to Camillo and others further reflects Meo's involvement in deciding which accounts will be serviced based on the payments of claims. He states: "Attached is a report by location. Please review this report. If this report is correct than we need stop servicing these accounts ASAP. This is based on billing company system not ours. Have someone verify. Please."

17. In another e-mail dated the same day, Meo gives directions concerning what tests should be run on specimens and the qualifications for the specimen collector. Meo states: "Test all specimen as Panel B as you have now regardless of payer to avoid confusion. . . . Lets designate people. There will be separate specimen collector. Qualification will be read and write and common sense."

4

August 13, 2012 E-mail

18. An August 13, 2012 e-mail reflects Meo's review of payments based on the claims submitted by AMS. He states: "Please someone start looking into these why are amounts are small for two of these three claims."

### Bank Records

19. As part of the scheme and artifice to defraud, Meo established companies in his son Kazim's name. The first of these companies was Hamayshaa, which was the titular majority owner of AMS. However, to keep a tight rein on Hamayshaa funds, on September 29, 2011, Meo signed a Regions Bank signature card (Regions Bank account xxxxxx9608) in the name of "Hamayshaa, LLC, Azeem Meo, Authorized Signer" and identified himself as the CFO of Hamayshaa. At the time he signed the signature card, Meo knew he was an excluded person and was prohibited from participating in any capacity in federal health care programs.

20. Additionally, Meo set up other companies in Kazim's name. Meo caused AMS to enter into contracts with the companies for "marketing and consulting services." By so doing, Meo attempted to conceal his illegal involvement and participation in AMS and at the same time obtain funds from AMS.

Series 7

21. Series 7 was one of the companies that Meo incorporated in February 2009. On September 30, 2010, Meo signed a Regions Bank signature card for an account in the name of Series 7 Outsourcing, LLC.

22. As part of the scheme to defraud, Meo caused Series 7 and AMS to enter into a contract. On July 31, 2011, Meo sent an e-mail to Camillo, which stated: "I would like to have agreement between Allegiance and Series 7 Outsourcing, LLC to sign marketing agreement.

5

This company will bring many accounts to you guys on commission basis." As directed, AMS entered into a contract with Series 7 on August 1, 2011.

United Trading

23.    Meo incorporated a second company, called United Trading, LLC, in September 2010. On September 30, 2010, Azeem Meo signed a Regions Bank signature card for an account in the name of United Trading. (Regions Bank account xxxxxx3287). United Trading purportedly provided consulting services to AMS.

AMS Bank Records

24.    As part of the fraud scheme, Meo took additional measures to ensure that he would have access to AMS funds. AMS bank records reflect that Meo had signature authority on several AMS bank accounts and used, or caused to be used, checks and wire transfers to withdraw funds from AMS accounts and to have the same deposited into the accounts of companies with which he was associated.

25.    To further the fraud scheme, on November 28, 2011, Meo signed a Regions Bank signature card in the name of "Allegiance Medical Services LTD, Azeem U. Meo, . . . and Kazim A. Meo" (Regions Bank account xxxxxx4981). On December 29, 2011, Meo signed a Regions Bank account signature card in the name of "Allegiance Medical Services LTD, (Regions Bank account xxxxxx9748), Azeem U. Meo, . . and Kazim A. Meo." Meo knew that Medicare, Medicaid, and other health care insurers electronically deposited claim reimbursement payments into these accounts. Thereafter, Meo caused payments of $61,000 to be made to Series 7 from these accounts.

26.    To further the fraud scheme, on July 14, 2011, Kazim Meo signed a First Collinsville Bank signature card in the name of "Anthony B Camillo / AMS Acct, Anthony B. Camillo and Kazim Azeem Meo" (First Collinsville Bank account xxxxx1602). Meo knew that

6

Medicare, Medicaid, and other health care insurers electronically deposited claim reimbursement payments into this account. Thereafter, Meo caused payments of $69,665 to be made to Series 7 and payments of $6,058 to be made to United Trading from First Collinsville Bank account xxxxx1602.

Execution of the Fraud Scheme

27. On or about the dates indicated below, in the Eastern District of Missouri,

**AZEEM U. MEO,**

the defendant herein, knowingly and willfully executed and attempted to execute, the above described scheme and artifice to defraud a health care benefit program, in connection with the delivery and payment for health care benefits, items, and services, that is, the defendant transferred, and caused to be transferred funds paid to AMS by Medicare and Medicaid to a bank account controlled by him, an excluded person:

| **Count** | **Date** | **Payer** | **Payee** | **Signer** | **Amount** |
|---|---|---|---|---|---|
| 1 | 3/22/12 | AMS | Series 7 | Azeem Meo Transfer | $21,000 |
| 2 | 2/29/12 | AMS | Azeem Meo | Azeem Meo Counter Check | $5,000 |

All in violation of Title 18, United States Code, Section 1347(a)(1) and Section 2.

## COUNT 3
### False Statements to Federal Agency
### Title 18, Section 1001(a)(2) and Section 2

The Grand Jury further charges that:

28. Paragraphs 1-6 and 9-26 are incorporated by reference as if fully set out herein.

29. The United States Department of Health and Human Services, Office of the Inspector General (HHS-OIG) is authorized to receive and consider requests for reinstatement from persons who have been excluded, in accordance with the provision of 42 CFR1001.3001-

7

3005, from participation in any federal health care program. Reinstatement is not automatic and no person will be reinstated unless and until HHS-OIG has approved the request for reinstatement.

30. On or about March 31, 2015, Meo filed a written request for reinstatement, following a five-year exclusion from participation in Medicare, Medicaid, and all other federal health care programs. On May 5, 2015, Meo submitted a notarized statement (Statement) to HHS-OIG, as part of his reinstatement application. The Statement contained 30 subparts or statements to which Meo had to affirm that the statement was true as to him or indicate that the statement was not true as to him or did not apply to him.

31. In two different sections of the Statement, Meo had to affirm that the answers he provided in the Statement were true. On page two, Meo stated: "I, AZEEM U. MEO, affirm that to the best of my knowledge, my responses to the following statements are true. . . . If the statement applies to me, I have handwritten my initials at the end of the statement in the specified area." As directed, Meo then answered and initialed each statement on the nine pages.

32. On the last page of the Statement, Meo had to certify that the information he provided in the Statement was true. The following certification, that Meo signed, was in bold, over-sized font: "**CERTIFICATION: I, having made all inquiries necessary to ascertain the truth, hereby certify that the contents of the statements made and information provided herein are true and accurate.**" Meo's attorney also signed the Statement.

33. Contrary to this certification, Meo knowingly presented false information in the Statement. On page 4 of the Statement, Meo had to indicate whether he had provided his complete employment history. Meo indicated that he had by initialing the following: "Listed below is my complete employment history from the effective date of my suspension/exclusion to

8

the present. It includes all health care employment, non-health care employment, self-employment and any periods of unemployment."

34. This was a false representation and statement because Meo did not list his complete history. He only hand-wrote the following: "3/9/10--PRESENT UNEMPLOYED/SEEKING CONSULTING WORK." Meo did not list his extensive and in-depth participation and involvement with AMS, Series 7, or United Trading.

35. Meo also made a false statement when responding to the following on page 5 of the Statement: "I am/have been associated as a partner, member, employee, etc. with the following person, group, clinic, HMO(s), etc. during my suspension/exclusion period." Meo initialed the statement, but did not list his association and involvement with AMS, Series 7, and United Trading.

36. On or about May 5, 2015, in the Eastern District of Missouri,

**AZEEM U. MEO,**

the defendant herein, knowingly and willfully made materially false, fictitious, and fraudulent statements and representations to HHS-OIG concerning a matter within the jurisdiction of the executive branch of the Government of the United States, that is, Meo failed to disclose his association and involvement with AMS, Series 7, and United Trading during his exclusion from March 2010 to the date of his 2015 reinstatement application.

All in violation of Title 18, United States Code, Section 1001(a)(2) and Section 2.

A TRUE BILL.

_____
FOREPERSON

RICHARD G. CALLAHAN
United States Attorney

_____
DOROTHY L. McMURTRY, #37727MO
Assistant United States Attorney

9