UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 4:16 CR 245 JAR (SPM) |
| vs. | ) | |
| | ) | |
| AZEEM U. MEO, | ) | |
| | ) | |
| Defendant. | ) | |

## SENTENCING MEMORANDUM

Defendant, Azeem U. Meo, comes before the Court for sentencing in the above-styled cause and presents the following to the Court:

## BACKGROUND INFORMATION

Mr. Meo is before the Court after pleading guilty on November 7, 2016 to two counts of knowingly violating 18 U.S.C. § 1347 (a) (1) by knowingly executing a scheme to defraud a health care benefit program, and one count of violation of 18 U.S.C. 1001(a) (2) by making false statements in connection with his reapplication for inclusion in Medicare, Medicaid and other federal health care programs.

All three charges arise out of Mr. Meo's involvement in Allegiance Medical Services ("AMS"), a medical services entity that provided drug testing services.  As noted in the Indictment, the principal of AMS was Tony Camillo.

In March of 2010 Meo and several others entered into a civil settlement relating to alleged overbilling to federal health care programs for physical therapy services through a billing company that he owned and operated, Ultimate Practice.  No criminal charges were filed against any of the defendants and a fine was paid by one of Meo's co-

defendants.  As a result of the settlement, however, Meo and his company, Ultimate Practice, were both excluded from participation in all federal health care programs for five years.

In late 2010 Mr. Meo was contacted by several individuals who urged him to become involved as a consultant and investor with AMS.  As part of the informal agreement, his son, Kazim, was to be employed by AMS.  Although Mr. Meo was not directly employed by AMS, his involvement constituted an indirect violation of the terms of his civil settlement with the Government which required that during the five-year exclusion: "Mr. Meo or UPS shall not submit or cause to be submitted to any Federal health care program any claim or request for payment for items or services …."

The day-to-day management of AMS continued to be conducted by Tony Camillo, but Mr. Meo did directly provide counsel and direction on various decisions and, at one point, maintained the finances of AMS, as verified by several e-mails that the Government has identified in the Indictment.  Meo's involvement began roughly in November of 2010 and ceased less than two years later in September of 2012 when Camillo fired his son, Kazim, and announced that he was taking over complete control of the company.

The Government alleges that its "loss" was $611,319.48, which is the total paid to AMS by Medicare, Medicaid and other federal health care programs during the approximate 22-month time period of Meo's involvement.  This position is maintained despite the fact that there exists no evidence or allegation that: (1) AMS was ever paid for any services that were not rendered; or (2) overpaid for services that were rendered.  According to the Government's current figures, Meo received a total of $161,708.80

between 2010 and 2012 from AMS. The Government's theory is apparently that no federal monies would have been paid to AMS had they known of Meo's involvement.

Defendant posits that the Government's "loss", at most, is the monies that were directly paid to Meo himself.  It is worth nothing that the $161,708.80, in part, constituted repayment of monies that he loaned to AMS.

## THIS WAS NOT A TYPICAL SCHEME TO DEFRAUD

This was not a 'fraud scheme' in the traditional use of the phrase.  Azeem concealed his involvement with the AMS because he knew that, at least in a technical sense, his involvement violated the terms of his 2010 settlement with the Government. Meo and his attorneys have conceded in the Guilty Plea Agreement - at pages 12-13 - that the Government would not have paid the company had they been aware of Meo's involvement.  This is quite a bit different, however, from a traditional "scheme to defraud" wherein the Government actually pays out money and the patients do not receive the services rendered.

## THE GOVERNMENT'S LOSS CANNOT FAIRLY BE FOUND TO BE THE TOTAL PAID TO AMS BY FEDERAL HEALTHCARE PROGRAMS

There is no evidence or allegation that *any* of the $611,319.48 that the Government claims as a "loss" constituted charges for services that were not performed. On the contrary, to the best of Meo's knowledge – he was not directly involved in the actual submission of billings to Medicare and Medicaid – the drug testing services were performed.  Had that not been the case, then the Government would certainly be seeking an indictment against Anthony Camillo, who ran the company on a day-to-day basis.

**SERIOUS HEALTH ISSUES EXIST FOR MR. MEO'S WIFE**

The defendant has experienced a number of health issues in the past five years,

however, a greater concern is the health of his wife, Qamar Meo.  Per the attached letter

from Qamar's primary treating physician, she suffers from rheumatoid arthritis and

severe pulmonary fibrosis that is associated with rheumatoid arthritis.  Her physician

states that her disease is currently very active and severe, and that she needs constant care

and attention.  Defendant Meo is her primary caregiver.

**CONCLUSION**

The original P.S.R. calculates a $611,319.48 "loss."  This takes the base offense

level to 20 which becomes 17 when three points are subtracted for acceptance of

responsibility.  This places Mr. Meo at a recommended sentencing range of 24-30

months.  Defendant Meo posits that the loss figure should be no higher than the

restitution figure which is $161,708.80.  This yields a total offense level of 12 and a

recommended range of punishment of 10-16 months.

Given all of the circumstances, including the fact that the Government's alleged

"loss" is not one due to theft or overbilling, the defendant's acceptance of responsibility,

and his role as a primary caregiver of his seriously ill wife, Mr. Meo and his attorneys

request that the Court depart from the guidelines and place him on probation with

appropriate conditions.

_____/s/  Al W. Johnson_____
Al W. Johnson #31485MO
LAW OFFICES OF AL W. JOHNSON
112 South Hanley, Suite 200
St. Louis, Missouri  63105
Phone:  (314) 726-6489
Fax:  (314) 726-2821
ajohnson@awj-law.com; awj@awj-law.com

and

Michael S. Ghidina
Michael S. Ghidina, P.C.
The Midvale Building
112 South Hanley
St. Louis, Missouri  63105-3418
Phone:  (314) 726-6106
Fax:  (314) 863-3821
msghidina@aol.com

Attorneys for Defendant Meo

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2017, I electronically filed the Meo Sentencing Memo with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to all counsel of record.

_____/s/ Al W. Johnson_____
Al W. Jonson